UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN DOE,<br><br>                   Plaintiff,<br><br>-against-<br><br>MARCUS JEREMY HUNTER; BEVERLY HUNTER; ZACHARY LEO ETHEART; MAX ETHEART; ALEXIS MARTIN; MORGAINE GOODING-SILVERWOOD; ROZANNE GOODING-SILVERWOOD; IMANI BROWN; GUARDIANS 1 AND 2,<br><br>                   Defendants. | 1:23-CV-10394 (LTS)<br><br>ORDER OF DISMISSAL |

LAURA TAYLOR SWAIN, Chief United States District Judge:

      Plaintiff "John Doe," who is appearing *pro se*, filed this action invoking the court's federal question and diversity jurisdiction. He specifically asserts federal-law claims under 42 U.S.C. § 1985(3), as well as state-law claims of assault and battery, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, "negligent failure to supervise and restrain," and false imprisonment, as well as state-law claims under Section 79-n of the New York Civil Rights Law and Section 11-100 of the New York General Obligations Law. Plaintiff sues: (1) Marcus Jeremey Hunter, a resident of the State of California; (2) Beverly Hunter, a resident of the State of California; (3) Zachary Leo Etheart, a resident of the State of New York; (4) Max Etheart, a resident of the State of Maryland; (5) Alexis Martin, a resident of the State of New York; (6) Morgaine Gooding-Silverwood, a resident of the State of New York; (7) Rozanne Gooding-Silverwood, a resident of the State of California; (8) Imani Brown, a

resident of the State of New York; and (9) unidentified "Guardians 1 and 2."[1] Plaintiff seeks damages as well as injunctive relief.

By order dated December 1, 2023, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. Plaintiff moves to proceed under a pseudonym. (ECF 3.)

For the reasons set forth below, the Court dismisses this action, but grants Plaintiff leave to replead his claims in an amended complaint to be filed within 30 days of the date of this order. Also, for the reasons set forth below, the Court denies Plaintiff's motion to proceed under a pseudonym, but without prejudice to Plaintiff's filing another such a motion, along with his amended complaint, within 30 days of the date of this order.[2]

## STANDARD OF REVIEW.

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470

---

[1] Plaintiff does not provide service addresses for any of the defendants.

[2] In light of Plaintiff's allegations and identifying information in his complaint and in his IFP application, the Court has directed the Clerk of Court to restrict electronic access to the complaint and the IFP application to a "case participant-only" basis.

2

F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.* But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.* at 679.

## BACKGROUND

Plaintiff describes himself as a gay African-American male who, in 2012, attended Columbia University ("Columbia") as an undergraduate student. He alleges the following: after his freshman year, he "became a member of Columbia's Intercultural Resources House . . . , a special-interest living community for students passionate about multicultural and diversity initiatives on campus." (ECF 1, at 4.) Plaintiff and Defendant Zachary Etheart ("Zachary"), another Columbia student, lived in the same Columbia residence hall in New York, New York. Zachary's roommate was Defendant Marcus Jeremy Hunter ("Marcus").

3

On September 7, 2012, Plaintiff, Zachary, Marcus, Defendant Imani Brown ("Imani"), Defendant Alexis Martin ("Alexis"), and Defendant Morgaine Gooding-Silverwood ("Morgaine"), all Columbia students who were than younger than 21 years of age, and others, gathered at Imani and Morgaine's dormitory room at the same residence hall. There, Morgaine offered Plaintiff alcoholic beverages; the defendants "dared Plaintiff to drink directly from a plastic bottle of vodka, over his objections, and plied him with copious amounts of alcohol before leaving." (*Id.* at 4-5.) "Photos of . . . Plaintiff, [the] [d]efendants and witnesses . . . consuming alcohol that Morgaine purchased . . . [were] posted to her Facebook account. Morgaine recently deleted these photos."[3] (*Id.* at 5.) "Plaintiff became severely intoxicated." (*Id.*) Marcus, "seeing that Plaintiff was severely intoxicated, . . . escorted Plaintiff into the men's bathroom . . . where other student-Defendants were present directly outside the men's bathroom." (*Id.*) Plaintiff asked Marcus "to let him go, but [Marcus] refused to let Plaintiff go." (*Id.*) Marcus then "put Plaintiff on his knees in the corner of the men's bathroom, took off his pants and forced Plaintiff to perform oral sex on him against his will and without his consent." (*Id.*) "Plaintiff resisted . . . Marcus[']s . . . attempts to force him into the bathroom corner while [Marcus] prevented him from escaping." (*Id.*) Marcus "took photos and/or video of his rape of Plaintiff" using a smartphone.[4] (*Id.* at 6.) "Plaintiff lost consciousness during his rape and his

---

[3] Plaintiff alleges that "the alcoholic beverages provided by and procured by Morgaine . . . and Imani and served in the[ir] dorm room were . . . purchased with monies given to them by Morgaine's parents" and/or Guardian 2, Imani's parent. (ECF 1, at 5, 8.) He also alleges that Defendant Rozanne Gooding-Silverwood ("Rozanne"), Morgaine's parent, "knew or should have known that her daughter had a history of procuring and consuming alcohol." (*Id.* at 5.) Plaintiff further alleges that Rozanne "was studying art at Columbia while her daughter[,] Morgaine[,] . . . was a college junior, [and Rozanne] did not take any preventive measures to ensure her underage daughter did not procure, consume or provide alcoholic beverages for herself or use them to inebriate other underage students on campus." (*Id.*)

[4] Plaintiff alleges that Defendant Beverly Hunter ("Beverly"), Marcus's parent, "had actual and constructive knowledge of . . . Marcus[']s . . . use of drugs and alcohol and [his]

4

next memory is waking up [to] see[] . . . Marcus . . in the hallway outside Plaintiff's dorm room . . . where Plaintiff immediately questioned [Marcus] as to what occurred the night before."[5] (*Id.*)

Marcus and/or some of the other defendants transmitted or showed other Columbia students the photographs or video that Marcus took of Plaintiff. "In the following weeks and months after the assault, a number of random students on Columbia's campus would take out their cell phones and take photos of Plaintiff as he walked through campus." (*Id.*) Plaintiff states that:

> [t]his horrific incident has had a tremendous physical and psychological impact on Plaintiff to this day. Plaintiff is currently under the care of a psychiatrist and a psychiatric counselor and they routinely discuss the actions of [Marcus] in these events and the non-consensual assault and recording. Plaintiff, to this day, experiences heavy anxiety, panic attacks and depression that interferes with his daily routine, related to this event. In fact, these events were so physically and psychologically traumatizing to Plaintiff that after the [d]efendants participated in the above-detailed conspiracy, Plaintiff attempted suicide and took a medical leave of absence from his studies at Columbia, which was granted through the medical and psychological evaluation of a physician/psychiatrist.

(*Id.* at 10-11.)

"Plaintiff notified a Columbia Title IX investigator of the sexual assault, but no action was taken against Marcus . . . for recording a lewd and non-consensual encounter in the men's bathroom with Plaintiff." (*Id.* at 11.) Yet, "Marcus, Zachary and/or his con-conspirators . . . reported to Columbia that Plaintiff himself had engaged in some unspecified misconduct." (*Id.*)

---

dangerous propensity and discriminatory sex-based animus but failed to supervise and/or restrain . . . Marcus." (ECF 1, at 7.) He also alleges the same with respect to Defendant Max Etheart ("Max"), Zachary's parent; Rozanne, Morgaine's parent; Defendant "Guardian 1," Alexis's parent; and Defendant "Guardian 2," Imani's parent, respectively. (*Id.* at 7-8.)

[5] Plaintiff alleges that the "student [d]efendants acted in furtherance of [a] conspiracy by forcing [him] into a basement bathroom and forcing him to perform oral sex . . . while they all stood outside the bathroom." (ECF 1, at 7.) The "student-[d]efendants[] participat[ed] . . . [in a] conspiracy [to] drug[] Plaintiff, facilit[ate] his assault, and [lie] to Columbia administrators to cover up this misconduct[;] [the conspiracy] was motivated by individual discriminatory animus toward Plaintiff's race and sexual orientation." (*Id.*)

They "collectively participated in a campaign to cover up their assault by making multiple contradicting and false accusations and by providing false testimony regarding Plaintiff to Columbia administrators." (*Id.*) This resulted in "Plaintiff[] being locked out of and [his] forced removal from his dormitory . . . into a dormitory on the other side of campus." (*Id.*)

Following Plaintiff's return to Columbia from his medical leave of absence, "he reported Columbia's mishandling of the incident to the [United States] Department of Education's Office of Civil Rights, which investigated Columbia." (*Id.* at 12.) In 2014, Columbia fired its Title IX investigator "who mishandled Plaintiff's investigation and harassed and intimidated Plaintiff." (*Id.*)

## DISCUSSION

### A.   Motion to proceed under a pseudonym

Plaintiff refers to himself in his complaint and in his IFP application as "John Doe" (ECF 1 & 2), and he has filed a motion to proceed under that name (ECF 3); he has not revealed his true name in any of his submissions in this action. Thus, the Court understands that Plaintiff is requesting to proceed in this action under the pseudonym "John Doe."

Rule 10(a) of the Federal Rules of Civil Procedure provides that "[t]he title of [a] complaint must name all the parties." Fed. R. Civ. P. 10(a). "This requirement, though seemingly pedestrian, serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188-89 (2d Cir. 2008). Courts have, however, permitted a party to proceed under a pseudonym in a limited number of circumstances. The United States Court of Appeals for the Second Circuit has articulated the following nonexhaustive list of ten factors that a court should consider when deciding whether to permit a party to proceed under a pseudonym:

> (1) whether the litigation involves matters that are highly sensitive and of a personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non parties; (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of plaintiff's identity; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court; (7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id.* at 189-90 (alterations, ellipses, quotation marks, and citations omitted). "[T]his factor-driven balancing inquiry requires a district court to exercise its discretion in the course of weighing competing interests. . . ." *Id.* at 190. (citation omitted).

"[A]llegations of rape are highly sensitive and of a personal nature, [and as] such[,] . . . this factor weighs . . . against disclosure of [a litigant's] identity." *Doe v. Telemundo Network Grp. LLC*, No. 22-CV-7665 (JPC), 2023 WL 6259390, at *4 (S.D.N.Y. Sept. 23, 2023). "That said, 'this factor is not dispositive,' and '[c]ourts in this district have explained that allegations of sexual assault, by themselves, are not sufficient to entitle a [litigant] to proceed under a pseudonym.'" *Id.* (quoting *Doe v. Weinstein*, 484 F. Supp. 3d 90, 94 (S.D.N.Y. 2020) (alteration in original)). In addition, "[t]he risk of psychological injury stemming from identification is a cognizable harm that can serve as a legitimate basis for proceeding anonymously. However, the potential injury alleged must be more than mere embarrassment or social stigmatization." *Doe*, 484 F. Supp. 3d at 94 (internal quotation marks and citations omitted). A plaintiff "must base

7

[his] allegations of mental harm on more than just mere speculation." *Id.* at 94-95 (internal quotation marks and citations omitted).

Courts recognize that "when allegations involve a [litigant's] sexual assault or rape, . . . reputational damage risk to [a litigant] is high." *Doe*, 2023 WL 6259390, at *6 (internal quotation marks and citation omitted). Yet, "[c]ourts have found that evidence of embarrassment, social stigmatization, and economic harm provides an insufficient basis for proceeding anonymously. In sum, courts should not permit [a] part[y] to proceed pseudonymously just to protect [that] part[y's] professional or economic life." *Doe v. Gerken*, No. 21-CV-1525, 2022 WL 167914, at *3 (D. Conn. Jan. 18, 2022) (internal quotation marks and citations omitted).

Moreover, "vague allegations of a general potential for retaliation are insufficient to overcome the presumption of public access." *Doe v. Related Cos., LLP*, No. 22-CV-7683 (LTS), 2022 WL 4357615, at *2 (S.D.N.Y. Sept. 19, 2022). "Courts have typically found concerns about public retaliation in the abstract, without more, insufficient to warrant a pseudonym." *Doe v. Gooding*, No. 20-CV-6569 (PAC), 2022 WL 1104750, at *5 (S.D.N.Y. Apr. 13, 2022) (collecting cases).

In addition, in this context, "missed job opportunities . . . are no different from the potential harms suffered by any unemployed plaintiff." *Klein v. City of New York*, No. 10-CV-9568 (LAK) (JLC), 2011 WL 3370402, at *1 (S.D.N.Y. Aug. 3, 2011) (Cott, M.J.) (memorandum & order). Also, "[a] plaintiff's use of a pseudonym is not justified by the mere fact that a case involves allegations of discrimination; such a result would require a plaintiff's anonymity in every one of the countless discrimination cases before this [c]ourt." *Id.*

In his complaint, Plaintiff asserts that the events that are the bases of his claims, including the alleged sexual assault, conspiracy, and dissemination of illicit photographs or video, have

8

"had a tremendous physical and psychological impact on [him] to this day," and that he "is currently under the care of a psychiatrist and a psychiatric counselor and they routinely discuss the actions of [Marcus] in these events and the non-consensual assault and recording." (ECF 1, at 10-11.) He also alleges that, "to this day, [he] experiences heavy anxiety, panic attacks and depression that interferes with his daily routine, related to this event." (*Id.* at 11.)

In his motion to proceed under a pseudonym, Plaintiff describes himself as "an aspiring young professional in New York State," and states that his purpose in filing the motion is "to protect [his] present focus and future aspirations from unnecessary and unwelcome distractions [with respect] to [his] professional and academic goals." (ECF 3.) He also states that the sensitive information contained in his complaint "could have deleterious consequences if [it] became public record," and that his "assailants and the institutions that enabled them have many outstanding legal resources with which they can retaliate against [him]." (*Id.*) Plaintiff further states that he wishes "to litigate the facts of this case without the potential frenzy of media attention that sexual assault cases usually warrant." (*Id.*) Finally, he states that as an "openly gay African-American male," he "fear[s] retaliation and reproach from an unscrupulous public if this information was to extend into [his] fledgling professional life and beyond the confines of this matter." (*Id.*)

In connection with its consideration of the Second Circuit's nonexhaustive list of factors in *Sealed Plaintiff*, the Court notes that, because Plaintiff has refused to reveal his true name in any of his submissions, it has thus far, in effect, been kept confidential in the context of this lawsuit. Plaintiff names only private individuals as defendants, not government parties, and he is suing those private individuals for their alleged actions. He has not addressed whether it is in the public's interest for him to proceed under a pseudonym or whether there is an alternative

9

mechanism for protecting his identity. Nor has Plaintiff addressed whether any of the defendants would suffer prejudice if the Court were to allow him to proceed under a pseudonym, or whether any such prejudice could be mitigated at particular stages of litigation.

It is clear, however, that the allegations that are the bases for Plaintiff's claims are of a highly sensitive and personal nature. Yet, while he alleges that he has suffered mental harm for which he has received, and continues to receive, treatment, the focus of Plaintiff's motion is not that mental harm or its exacerbation, should his true name be revealed, nor does it discuss the possibility or severity of other such mental or physical harms to himself or others. Rather, the focus of his motion is the possibility of unspecified negative professional and academic consequences, retaliation by the defendants and the enabling institutions, a media "frenzy," and "retaliation and reproach from an unscrupulous public" because he identifies himself as an "openly gay African-American male," which the Court understands to indicate a fear of discrimination.

As discussed above, none of the concerns articulated in Plaintiff's motion, even if they were specified, which they are not, are sufficient, by themselves, to overcome Rule 10(a)'s requirement that the parties to a federal civil action must be identified in the complaint for the purpose of public scrutiny. Accordingly, the Court denies Plaintiff's motion to proceed under a pseudonym. In light of Plaintiff's *pro se* status, and because the Court is granting Plaintiff leave to replead his claims in an amended complaint, however, the Court denies Plaintiff's motion to proceed under a pseudonym without prejudice to Plaintiff's filing another such motion with his amended complaint. In such a motion, Plaintiff must address why his request to proceed under a pseudonym should be granted in light of the factors listed in *Sealed Plaintiff*.

**B.**     **Claims of conspiracy under 42 U.S.C. § 1985(3)**

Plaintiff brings a claim of conspiracy under 42 U.S.C. § 1985(3). To state such a claim, a plaintiff must allege facts suggesting the existence of: (1) a conspiracy; (2) for the purpose of depriving the plaintiff of the equal protection of the laws, or equal privileges or immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of his right or privilege as a citizen of the United States. *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999). "[T]he [Section 1985(3)] conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Id.* (internal quotation marks and citation omitted). Vague and unsupported assertions of a claim of conspiracy will not suffice to state a claim upon which relief can be granted. *See, e.g.*, *Wang v. Miller*, 356 F. App'x 516, 517 (2d Cir. 2009) (summary order); *Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003); *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997).

Plaintiff's allegations are not sufficient to state a claim of conspiracy under Section 1985(3). Although Plaintiff provides detailed descriptions of the events of September 7, 2012, the facts alleged do not address the elements of a conspiracy under Section 1985(3). Plaintiff does not show that the defendants conspired against him to violate his rights or privileges as a citizen of the United States because of some racial or other class-based invidious discriminatory animus that they held against him; his complaint merely asserts, in a conclusory manner, that the defendants conspired against him. The Court therefore dismisses Plaintiff's claims of conspiracy under Section 1985(3) for failure to state a claim on which relief may be granted. *See* 28 U.S.C.

§ 1915(e)(2)(B)(ii). The Court, however, grants Plaintiff leave to replead these claims in an amended complaint in which he alleges facts sufficient to state such a claim.[6]

## C.     Claims under state law

Because Plaintiff seems to assert his remaining claims under state law, the Court will examine whether he has alleged facts sufficient to invoke the court's diversity jurisdiction to consider those claims.[7]

The original subject matter jurisdiction of the federal district courts is limited and is set forth generally in 28 U.S.C. §§ 1331 and 1332. Under these statutes, a federal district court has original subject matter jurisdiction only when a "federal question" is presented or, if the plaintiff is asserting claims under state law under the court's diversity jurisdiction, when the plaintiff and the defendants are citizens of different States and the amount in controversy exceeds the sum or value of $75,000. "'[I]t is common ground that in our federal system of limited jurisdiction any party or the court sua sponte, at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction.'" *United Food & Com. Workers Union, Loc. 919, AFL-CIO v. CenterMark Prop. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) (quoting *Manway Constr. Co., Inc. v. Hous. Auth. of the City of Hartford*, 711 F.2d 501, 503 (2d Cir. 1983)); *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-

---

[6] While Plaintiff invokes New York's Adult Survivors Act (ECF 1, at 1-2), the Court will not address, at this time, whether his claims of conspiracy under Section 1985(3) are timely pursuant that state statute.

[7] Because the Court has dismissed all of Plaintiff's claims under federal law, it declines to consider, under its supplemental jurisdiction, Plaintiff's claims under state law. *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." (footnote omitted)). The Court cannot, however, decline to consider claims under state law if it has original diversity jurisdiction to consider those claims. *See* 28 U.S.C. § 1332(a).

matter jurisdiction, the court must dismiss the action."); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative.").

To establish the court's diversity jurisdiction, a plaintiff must first show that he and the defendants are citizens of different States. *See* 28 U.S.C. § 1332(a)(1); *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998) ("A case falls within the federal district court's 'original' diversity 'jurisdiction' only if diversity of citizenship among the parties is complete, *i.e.*, only if there is no plaintiff and no defendant who are citizens of the same State."). For diversity purposes, an individual is a citizen of the State where he or she is domiciled, which is defined as the place where a person "has his [or her] true fixed home . . . and to which, whenever he [or she] is absent, he [or she] has the intention of returning." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (internal quotation marks and citation omitted). An individual "has but one domicile." *Id.* The plaintiff must also allege to a "reasonable probability" that his or her claims under state law are in excess of the sum or value of $75,000, the statutory jurisdictional amount. *See* § 1332(a); *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006) (citation and internal quotation marks omitted).

Plaintiff seems to allege that he is a citizen of the State of New York, that Marcus, Beverly, and Rozanne are citizens of the State of California, and that Max is a citizen of the State of Maryland. (ECF 1, at 2-3.) He also seems to allege that, like himself, Zachary, Morgaine, Alexis, and Imani are citizens of the State of New York. (*Id.*) Plaintiff does not allege the state citizenships of Guardians 1 and 2. Because Plaintiff, a New York State citizen, appears to sue other New York State citizens, the requirement of complete diversity of citizenship as between the plaintiff and the defendants is not met. In addition, while Plaintiff seeks hundreds of millions

of dollars in damages as to his claims under state law, he does not allege facts sufficient to show that such claims have a value in excess of $75,000, which is the statutory jurisdictional amount required to invoke this court's original diversity jurisdiction; his allegations with regard to the values of those claims are conclusory. Accordingly, to the extent that Plaintiff asserts claims under state law, under the court's diversity jurisdiction, the Court dismisses those claims for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

Because Plaintiff is proceeding *pro se*, however, to the extent that he wishes to assert claims under state law under the court's diversity jurisdiction, the Court grants him leave replead such claims in an amended complaint in which he allege facts sufficient to show that the court has diversity jurisdiction of those claims. If Plaintiff wishes to invoke the court's diversity jurisdiction as to his claims under state law, he must name only defendants who are not citizens of the State that he is a citizen of, and he must allege facts that show that his claims under state law satisfy the jurisdictional amount for diversity claims – an amount in excess of the sum or value of $75,000.

## CONCLUSION

The Court dismisses this action. The Court dismisses Plaintiff's claims under federal law for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). The declines to consider, under its supplemental jurisdiction, Plaintiff's claims under state law. *See* 28 U.S.C. § 1367(c)(3). The Court dismisses Plaintiff's claims under state law, to the extent Plaintiff asserts them under the court's original diversity jurisdiction, for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). The Court, however, grants Plaintiff leave to replead his claims, as specified above, in an amended complaint to be filed within 30 days of the date of this order. If Plaintiff fails to file an amended complaint within the time allowed, or fails to show good cause to excuse such failure, the Court will direct the Clerk of Court to enter judgment

dismissing this action for the reasons set forth in this order, and to make Plaintiff's original complaint and IFP application publicly available on the court's electronic docket.[8]

The Court also denies Plaintiff's motion to proceed under a pseudonym (ECF 3), but without prejudice to Plaintiff's filing another such motion along with his amended complaint, as specified above, within 30 days of the date of this order. If Plaintiff files such a motion, Plaintiff must also file two copies of his amended complaint: one in which he refers to himself by the pseudonym "John Doe," and one in which he refers to himself by his true name. The Court will determine which copy will be made publicly available when it decides whether to grant such a motion.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court not to enter judgment as the Court has granted Plaintiff leave to file an amended complaint and leave to file another motion to proceed under a pseudonym.

SO ORDERED.

Dated:  January 8, 2024
         New York, New York

                                                   /s/ Laura Taylor Swain
                                                   LAURA TAYLOR SWAIN
                                                   Chief United States District Judge

---

[8] Plaintiff's amended complaint should include the service address of each defendant named in the amended complaint.